BRYSON, Circuit Judge,
concurring in part and dissenting in part.
I agree with the majority’s analysis and disposition of most of the issues in this case; my disagreement is limited to the portion of the judgment that upholds the district court’s summary judgment rulings on inducement of infringement and contributory infringement. In my view, Vita-Mix introduced enough evidence on those issues to overcome Basic’s summary judgment motion.
1. As to inducement, the majority concludes that although there was evidence of direct infringement, Vita-Mix introduced no evidence that Basic encouraged or instructed users of its accused devices to operate them in an infringing manner. My review of the evidence persuades me *1334 that Vita-Mix has pointed to disputed questions of material fact with respect to induced infringement.
In the portion of its opinion dealing with direct infringement, the majority agrees that Vita-Mix’s evidence is sufficient to create a factual issue as to whether, when the stir stick of the accused device is in the “default” position during normal operation — i.e., when it is not being used to stir the contents of the blender — the device infringes. Under those circumstances, a finder of fact could find inducement of infringement based on instructions that direct the user to operate the device in a normal fashion. That is because the fact-finder could conclude that operating the device in the normal fashion entails operating it so that the stir stick is in the default position, even if for a short period at the outset or for intermittent periods during the use of the blender.
In his expert report, Dr. Swanger stated that in normal operation, the accused devices will practice the claimed method. He explained that during operation, “when the stir stick is inserted into the container but not held by a user, the natural, default position for the stir stick is at or near the center of the container without touching the sides.” With the stir stick in that default position during operation, he explained, the accused products would infringe. Dr. Swanger then analyzed Basic’s instructions for using the blenders and found that they did not direct users to avoid using the device in the default mode.
The evidence of Basic’s videotaped demonstration of the operation of the accused device, which was shown on television, was to the same effect. The demonstration showed the normal operation of the device, depicting periods of time in which the operator did not use the stir stick or even touch it. During those periods, the stir stick appeared to remain in the default position near the center of the container, not touching the sides. A fact-finder could regard that advertising demonstration as a form of instruction on the use of the device that entailed using it at least in part in an infringing manner.
The majority relies on Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348 (Fed. Cir.2003), for the proposition that an intent to induce infringement cannot be inferred from a defendant’s knowledge that some users of the product may infringe. But this case is quite different from Warner-Lambert. There, the court found no inducement because there were many uses for the accused product and because “fewer than 1 in 46 sales of that product [were] for infringing uses.” Under those circumstances, the court concluded that “we are not in a position to infer or not infer intent on the part of Apotex without any direct evidence.” Id. at 1365. In contrast, if we accept Vita-Mix’s evidence as true, in this case nearly all users will infringe as soon as they turn on the accused blender.
The difference can be illustrated by a simple example: Suppose a manufacturer sells a device that can be made to infringe by removing a set of screws that are in place when the device is sold. In such a case, the manufacturer would not ordinarily be liable for inducing infringement unless it instructed users to remove the screws or otherwise encouraged them to do so. But if the manufacturer sold the device with the screws removed, so that the device would infringe if used in the ordinary manner in the “as-sold” configuration, the fact that the manufacturer provided screws that would enable a user to convert the device into a non-infringing form would not shield the manufacturer from liability for vicarious infringement. In such a case, the manufacturer could be found liable for inducement even if the instruction manual taught users how to insert the screws and pointed out the ad *1335 vantages of using the device in that altered, noninfringing form.
Finally, at least some of Basic’s instructions arguably give specific directions to use the accused device in the default manner for some purposes. To begin with, one of the instruction manuals in the record directs the user to turn on the device with the stir stick in place, to start the blending process, and to turn off the device when the blending is complete. The manual contains no intervening reference to manipulating the stir stick. Elsewhere, the instructions for making “smoothies” direct a sequence of steps, including the use of the “pulse” feature and the low and high power settings sequentially until the contents of the blender are smooth. The instructions add, “Turn the stir stick counter-clockwise for best mixing results.” Even assuming that “turning” the stir stick is interpreted to mean rotating it around the inner edges of the container, the suggested departure from the default operation could be viewed as only an optional step, or one to be used from time to time during the blending process, rather than throughout the process from beginning to end. The “instruction” evidence thus seems to me sufficient to overcome summary judgment on the issue of whether the instructions evidence the intent to encourage infringement.
2. As applied to this case, a similar analysis governs the resolution of the issue of contributory infringement and the question, common to vicarious infringement generally, whether the accused device can be used for substantial noninfringing purposes. As the majority notes, this court has held that a party will not be held liable for infringement if that party provides a device that can be used for infringement but can also be used for substantial noninfringing purposes. In this case, the evidence proffered by Vita-Mix, summarized above, would allow a fact-finder to conclude that when the accused device is used with the stir stick in place, it will frequently be used in an infringing manner and that it would be most unusual for an ordinary purchaser of the blender to use it in a manner that avoided infringement altogether.
Basic makes two arguments as to why there is no contributory infringement in this case, neither of which is persuasive. First, it points out that the accused blenders are sold not only with a stir stick, but also with a “lid cap” that can be used in place of the stir stick, and that when the blenders are used with the lid cap in place of the stir stick, they do not infringe at all. That, according to Basic, is a “substantial non-infringing use” that is sufficient to avoid liability for contributory infringement. That argument is entirely unconvincing, as the majority correctly points out.
Basic’s second argument is based on the testimony of Vita-Mix’s president, who answered “yes” when asked if “it’s possible to use a Basics blender in a non-infringing manner.” That answer, however, does not provide the “Aha!” moment that Basic seems to believe it does. In the context of this case, the question was the wrong one: What is important is not whether it is possible to use the Basic blender in a noninfringing manner, but whether it is possible (or likely) that a user could (or likely would) operate it solely in a noninfringing manner. There is no dispute that the stir stick can be used in a noninfringing manner, such as during the time the user is rotating the stir stick within the blender container, keeping the stir stick in contact with the container’s inner walls. But that does not overcome the evidence offered by Vita-Mix that customers who use the Basic device with the stir stick inserted will infringe in a large percentage of instances and that the device has no *1336 substantial use that does not entail at least some period of infringement.
In this regard, I disagree with the majority’s comment that “the frequency of infringing use ... does not speak to the substantiality of the non-infringing use.” Vita-Mix’s evidence suggests that on the facts of this case frequency is closely related to substantiality, and I agree. That is because, based on Vita-Mix’s evidence, a user of the accused devices would have to take exceptional measures to avoid infringement; i.e., the user would have to rotate the stir stick continuously during the blending process without letting it rest at any point in the default position. A finder of fact could conclude that, as a practical matter, the continuous rotation process would be an infrequent mode of noninfringing use, and for that reason, an insubstantial one.
I would likewise discount the elements of the structure and packaging of the accused devices, factors on which the majority relies. The majority is correct that those features suggest using the stir stick to stir in a manner that results in contact with the sides of the container. But the features to which the majority points do not support the inference that the stirring will be continuous and that the stir stick therefore will never be left in the default position during operation. As to that issue, Vita-Mix’s evidence is to the contrary.
In sum, without suggesting how any of the above factual issues might ultimately be decided, I would hold that the evidence before the trial court is sufficient to overcome Basic’s motion for summary judgment on both inducement and contributory infringement.